## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMEEN McCALL | : |
| | : CIVIL ACTION – LAW |
| v. | : |
| | : NO.  19-cv-2568 |
| CITY OF PHILADELPHIA and | : |
| CORRECTIONS OFFICER | : |
| JOJO THAZHATHEL | : |

## ORDER

AND NOW, on this _____ day of _____, 2020, upon consideration of the motion of defendant, Jojo Thazhathel, to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and any response thereto, it is hereby ORDERED and DECREED that the Motion is GRANTED; AND all claims against defendant, Jojo Thazhathel, are DISMISSED WITH PREJUDICE.

**BY THE COURT:**

_____
Anita B. Brody, U.S.D.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMEEN McCALL | : |
| | : CIVIL ACTION – LAW |
| v. | : |
| | : NO.  19-cv-2568 |
| CITY OF PHILADELPHIA and | : |
| CORRECTIONS OFFICER | : |
| JOJO THAZHATHEL | : |

## MOTION OF DEFENDANT, JOJO THAZHATHEL,
## TO DISMISS UNDER FED. R. CIV. PRO. 12(b)(6)

Defendant, Correctional Officer Jojo Thazhathel, by and through his attorneys, Bennett, Bricklin & Saltzburg LLC, moves to dismiss all claims against him under Federal Rule of Civil Procedure 12(b)(6), and avers as follows in support of his motion:

1.    Plaintiff did not amend his complaint to identify defendant, Officer Jojo Thazhathel, until October 29, 2019, more than four months after the expiration of the statute of limitations.

2.    Plaintiff's amended complaint should be dismissed because it was improperly filed without leave of court or the written consent of all parties. This request is not merely procedural. For, had plaintiff properly moved to amend the complaint, Officer Thazhathel would have opposed the proposed amendment as futile and as the product of undue delay.

3.    Additionally, all claims against Officer Thazhathel should be dismissed as barred by the statute of limitations.  This is because Officer Thazhathel did not receive notice of the suit within ninety days of the filing of the original complaint as required for relation back of the amendment under Federal Rule of Civil Procedure 15(c).

WHEREFORE, defendant, Jojo Thazhathel, respectfully requests that his Motion be GRANTED, and that all claims against him be DISMISSED WITH PREJUDICE.

**BENNETT, BRICKLIN & SALTZBURG LLC**

By: _____

NICHOLAS A. CUMMINS
Attorney I.D. No. 203238
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA  19102
(215) 665-3328 / (215) 561-6661 – fax
cummins@bbs-law.com
Attorney for Defendant, Jojo Thazhathel

Date:   January 16, 2020

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMEEN McCALL | : | |
| | : | CIVIL ACTION – LAW |
| v. | : | |
| | : | NO.  19-cv-2568 |
| CITY OF PHILADELPHIA and | : | |
| CORRECTIONS OFFICER | : | |
| JOJO THAZHATHEL | : | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant, Correctional Officer Jojo Thazhathel, by and through his attorneys, Bennett, Bricklin & Saltzburg LLC, moves to dismiss all claims against him under Federal Rule of Civil Procedure 12(b)(6), and submits this brief in support of his motion.

## I.    SUMMARY OF ARGUMENT

Plaintiff's amended complaint should be dismissed for two reasons.  First, it was improperly filed without leave of Court or the written consent of all parties.  Second, plaintiff's claims against Officer Thazhathel are time barred and do not relate back to the filing of the original complaint.

## II.    FACTUAL OVERVIEW AND PROCEDURAL HISTORY

In this matter, plaintiff, Ameen McCall, seeks to recover under 42 U.S.C.A. § 1983 for injuries he alleged sustained on June 17, 2017 while a prisoner at Curran Fromhold Correctional Facility.  See Exhibit A, Complaint; See Exhibit B, Amended Complaint.  In particular, plaintiff alleges that on this date he was injured in an altercation with another inmate, and contends that he was refused medical treatment for his injuries in alleged violation of his Eighth Amendment rights. In his amended complaint, plaintiff alleges that he complained to moving defendant, Correctional Officer Jojo Thazhathel, in the overnight hours of June 17 to 18, 2017, and that Officer Thazhathel refused to obtain medical care for him.  See Exhibit B at ¶¶ 21-24.

Plaintiff commenced this suit by filing his original complaint on June 13, 2019.  See Exhibit A.  The original complaint was filed just five days before the expiration of the two year statute of limitations.  The original complaint did not identify Officer Thazhathel as a defendant.  Id.  Instead, it identified "Corrections Officer John Doe."  Id.  at ¶¶ 20-23.  The original complaint also named the City of Philadelphia and Corizon Health as defendants.

The City of Philadelphia and Corizon Health both waived service of the original complaint as of June 19, 2019.  See Doc. Nos. 2, 5.  On July 24, 2019, plaintiff executed a stipulation to dismiss Corizon Health.  See Doc. No. 7.  The City of Philadelphia filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) on July 29, 2019.  See Doc. No. 8.

On September 2, 2019, *eighty* days after filing the original complaint, plaintiff filed a Motion for Leave to Conduct John Doe Discovery.  See Doc. No. 11.  On September 4, 2019, the Court granted the motion.  See Exhibit C.  The Court's order granted plaintiff leave to serve written discovery requests, and also to notice depositions of relevant City of Philadelphia employees in order to identify the John Doe named in the complaint.  Id.  The order *did not* grant plaintiff leave to file an amended complaint.

On September 26, 2019, the Court held a Rule 16 conference.  Following the conference, the Court entered an order granting plaintiff "an extension of time to serve any John Doe Defendants" by November 20, 2019.  See Exhibit D, Order Granting Extension.  This order *did not* grant plaintiff leave to file an amended complaint.  The same day, the Court also entered a Scheduling Order.  See Exhibit E, Scheduling Order.  The Scheduling Order also did not grant plaintiff leave to file an amended complaint.  Id.

On October 4, 2019, plaintiff took the deposition of Officer Thazhathel in aid of John Doe discovery.  See Exhibit F, Excerpts of Deposition of Officer Thazhathel.  The deposition was taken

one hundred thirteen days after the filing of the original complaint, and one hundred nine days after the expiration of the statute of limitations. At the deposition, Officer Thazhathel testified that he first learned of the plaintiff's lawsuit two days earlier, on October 2, 2019 – one hundred eleven days after the suit was filed. See Exhibit F at 58.

On October 29, 2019, plaintiff filed his amended complaint identifying Officer Thazhathel as a defendant. Plaintiff did not obtain the written consent of all parties[1] or court approval to file the amended complaint. The amended complaint was filed one hundred thirty four days after the expiration of the statute of limitations, and one hundred thirty eight days after the original complaint. On November 18, 2019, Officer Thazhathel waived service of the amended complaint. See Doc. No. 24.

## III.   LEGAL ARGUMENT

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for the dismissal of a claim for the "failure to state a claim for which relief can be granted" through a pre-pleading motion. Fed. R. Civ. Pro. 12(b)(6). To survive a motion to dismiss, a complaint must allege facts that adequately set forth each of the essential elements of a cause of action. Nami v. Fauver, 82 F.3d 63, 65 (3rd Cir. 1996). Although the Court must accept all well-pleaded factual allegations contained in the complaint, it need not credit bare allegations, conclusory assertions or unwarranted factual inferences. Maio v. Aetna, Inc., 221 F.3d 472, 485 n.12 (3d Cir. 2000); Morse

---

[1] Counsel for moving defendant has consulted with counsel representing the City of Philadelphia. The City's attorney advises that she has not been able to locate any documentation of consent to the filing of an amended complaint. The City's current attorney also reports that she has consulted with the attorney who was representing the City at the time the amended complaint was filed, and he also has no recollection of providing consent to the amended complaint. If written consent was provided, moving defendant is unaware of it.

3

v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997); Kost v. Kozakiewwicz, 1 F.3d

176, 183 (3d Cir. 1993); Perry v. Grant, 775 F.Supp. 821 (M.D. Pa. 1991).  Bald assertions and

conclusions of law will similarly not survive a motion to dismiss.  Gardiner v. Mercyhurst College,

942 F.Supp. 1050, 1052 (M.D. Pa. 1995).  In short, the complaint's "[f]actual allegations **must be**

**enough to raise a right to relief above the speculative level**..., on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)...." Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (U.S. 2007) (emphasis added, citations omitted).

"Where a complaint pleads fact that are 'merely consistent with' a defendant's liability, it 'stops

short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal,

556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), quoting, Twombly, 550 U.S.

at 557, 127 S.Ct. at 1955.

> **B.    The Amended Complaint Should be Stricken as Improperly Filed.**

Plaintiff's amended complaint should be dismissed because it was improperly filed without

leave of court or the written consent of all parties.  See Fed. R. Civ. Pro. 15(a)(1-2).

Federal Rule of Civil Procedure 15(a) governs the timing of the filing of an amended

complaint.  It states, in relevant part:

> **(a) Amendments Before Trial.**
>
> > **(1)** *Amending as a Matter of Course*.  A party may amend its pleading once
> > as a matter of course within:
> >
> > > **(A)** 21 days after serving it, or
> > >
> > > **(B)** if the pleading is one to which a responsive pleading is required,
> > > 21 days after service of a responsive pleading or 21 days after
> > > service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> >
> > **(2)** *Other Amendments*.  In all other cases, a party may amend its pleading
> > **only with the opposing party's written consent or the court's leave.**  The
> > court should freely give leave when justice so requires.

4

Fed. R. Civ. Pro. 15(a) (emphasis added).  In other words, more than 21 days after the service of a motion to dismiss under Rule 12(b), an amended complaint may only be filed with leave of court or the written consent of all parties.

In this case, the City of Philadelphia filed a motion to dismiss on July 29, 2019, so any amendment permitted "as a matter of course" was due not later than August 19, 2019.  Since the amended complaint was not filed by this deadline, plaintiff could only submit an amended complaint with leave of court or the written consent of all parties.  Since plaintiff did not obtain either written consent or leave of court, the amended complaint should be stricken.

This request is not merely procedural.  For, had plaintiff properly moved to amend the complaint, Officer Thazhathel would have opposed the proposed amendment as time barred and futile (as discussed below), and as the product of undue delay.  See Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2008) (leave to amend is properly denied for reasons of "undue delay, bad faith, and futility").  For this reason, plaintiff's amended complaint should be dismissed.

**C.**    **All Claims Against Officer Thazhathel Should be Dismissed as Barred by the Statute of Limitations.**

Even if plaintiff's amended complaint had been properly filed, all claims against Officer Thazhathel should be dismissed as barred by the two year statute of limitations.

**1.**    ***Plaintiff's Claim against Officer Thazhathel is Time-Barred and Does Not Relate Back to the Filing of the Original Complaint.***

It is well established that "the appropriate limitation period for § 1983 actions brought in Pennsylvania is the two-year limitation provided by 42 Pa. Cons. Stat. Ann. § 5524."  Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985), citing, Wilson v. Garcia, 471 U.S. 261, 105 S. Ct. 1938, 85 L. Ed.2d 254 (1985).  The statute of limitations begins to run when the cause of action accrues.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994).

"Federal law which governs the accrual of section 1983 claims establishes that the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action."  Gwenty v. RTC, 937 F.2d 899, 919 (3d Cir. 1991). In this case, plaintiff pleads that he was injured on June 17, 2017, and was refused care by Officer Thazhathel on June 17 into June 18, 2017.  See Exhibit B at ¶¶ 19-24.  Thus, **the statute of limitations on plaintiff's claims expired not later than June 18, 2019**, more than four months before plaintiff filed his amended complaint naming Officer Thazhathel as a defendant.

Since Officer Thazhathel was not named as a defendant prior to the expiration of the statute of limitations, all claims against him are time barred unless the amended complaint relates back to the filing of the original complaint.  Relation back of amendments is governed by Federal Rule of Civil Procedure 15(c)(1), which provides:

> **(1)** *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
>
> **(A)** the law that provides the applicable statute of limitations allows relation back;
>
> **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> **(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and **if, within the period provided by Rule 4(m) for serving the summons and complaint**, the party to be brought in by amendment:
>
> > **(i) received such notice of the action that it will not be prejudiced** in defending on the merits; **and**
> >
> > **(ii) knew or should have known that the action would have been brought against it, but for a mistake** concerning the proper party's identity.

Fed. R. Civ. Pro. 15(c) (emphasis added). Thus, where an amendment changes the name of a party, it relates back only if the newly identified defendant received sufficient notice of the action within the time period provided by Federal Rule of Civil Procedure 4(m) for serving the original complaint[2].

Federal Rule of Civil Procedure 4(m) provides **ninety days** to serve the summons. Fed. R. Civ. Pro. 4(m). Thus, the amended complaint does not relate back unless the newly identified defendant received notice within ninety days of the filing of the original complaint. Garvin v. City of Philadelphia, 354 F.3d 215, 221 (3d Cir. 2003); Singletary v. Pa. Dept. of Corrections, 266 F.3d 186, 194 (3d Cir. 2001). "**Plaintiff has the burden** of showing that the proposed new Defendants had notice of the suit." E.H. v. School Dist. Of Phila., No. 08-cv-2392, 2009 U.S. Dist. LEXIS 118921 at *10 (E.D. Pa. Dec. 21, 2009) (emphasis added), citing, Estate of Tony Grier, No. 07-cv-4224, 2009 U.S. Dist. LEXIS 48905 at *8 (E.D. Pa. Jun. 11, 2009).

In this case, plaintiff's complaint pleads no facts from which it could be inferred that Officer Thazhathel received notice of the lawsuit within ninety days of the filing of the original complaint. Indeed, at his deposition taken in aid of plaintiff's John Doe discovery, Officer Thazhathel confirmed that he did not learn about the lawsuit until two days earlier, on October 2, 2019 – **one hundred eleven days** after the filing of the original complaint[3]. Plaintiff's amended complaint having failed to plead any facts suggesting that proper notice was provided, the amended

---

[2] Moving defendant agrees that the amended complaint arose out of the same transaction or occurrence set out in the original complaint. As such, the requirements of Rule 15(c)(1)(B) are not at issue.

[3] Defendant notes that in considering a Motion to Dismiss under Rule 12(b)(6), the court generally does not consider matters outside of the pleadings. The fact remains that the Amended Complaint nowhere pleads any facts that suggest notice to Officer Thazhathel. This alone is dispositive. Moreover, the limited scope of review on Rule 12(b)(6) serves to further underscore the prejudice caused by plaintiff's failure to properly move for leave of court before filing the motion to amend, where these additional facts could be properly placed before the court for consideration.

complaint does not relate back to the filing of the original complaint, and all claims against Officer

Thazhathel are barred by the statute of limitations.  As such, all claims against Officer Thazhathel

should be dismissed with prejudice.

> **2.** **_The Notice Period for Relation Back Cannot be Extended for Good_**
> **_Cause; and, Even if it Could, Good Cause Does Not Exist._**

Plaintiff is expected to contend that because the Court extended the time for service on any

John Doe defendants to November 20, 2019, the amended complaint relates back to the filing of

the original complaint.  Any such argument is misplaced for two reasons.  First, the notice period

for relation back cannot be extended by the Court.  Second, even if the notice period could be

extended, the good cause for the extension does not exist.

As discussed above, an amendment only relates back "if, within the period provided by

Rule 4(m) for serving the summons and complaint," the defendant is given notice of the action and

knew or should have known that he would be named as a party but-for a mistake.  Fed. R. Civ.

Pro. 15(c)(1)(C).  The full text of Rule 4(m) is as follows:

> **(m) Time Limit for Service.**  If a defendant is not served within 90 days after the
> complaint is filed, the court – on motion or on its own after notice to the plaintiff –
> must dismiss the action without prejudice against that defendant or order that
> service be made within a specified time.  But if the plaintiff shows good cause for
> the failure, the court must extend the time for service for an appropriate period.
> This subdivision (m) does not apply to service in a foreign country under Rule 4(f),
> 4(h)(2), or 4(j)(1), or to service of a notice under Rule 7.1(d)(3)(A).

Fed. R. Civ. Pro. 4(m).  Thus, plaintiff may argue that because the Court extended the time for

serving the John Doe defendants to November 20, 2019, the amendment was timely filed under

Rule 15(c)(1)(C) and relates back.  This argument would be incorrect, because the Court is not

permitted to extend the notice period for relation back.

In <u>E.H. v. School Dist. Of Phila</u>, *supra*, the court considered and rejected this specific

argument.  In <u>E.H.</u>, the plaintiff sought to amend the complaint to add two new defendants long

after the expiration of the then-existing one hundred twenty day[4] time period specified by Rule 4(m).  Conceding that the proposed new defendants were not notified within the time period, the plaintiffs "instead attempt[ed] to impute a 'good cause' analysis into the [90] day notice requirement of Rule 12(c)(1)(C), asserting they had good cause for failure to satisfy the notice requirement as they only recently learned the identity of [the John Doe defendants]."  E.H., 2009 U.S. Dist. LEXIS 118921 at *11.

The Court specifically rejected the argument that the notice period required for relation back under Rule 15(c) could be extended by the court for good cause.  It explained:

> **We decline to engage in a 'good cause' analysis because the applicable rule, 15(c)(1), says nothing about a "good cause" exception**.  While 15(c)(1) does reference Rule 4(m), which includes "good cause" language, a careful reading of Rule 4(m) reflects that the "good cause" language affords a Court discretion to consider reasons to allow service of a summons beyond [90] days.  That issue – service of summons – is not, however, before the Court.  Rule 15(c)(1)'s reference to the [90] day time period pertains to the time in which the party to be added shall receive "notice of the action that it will not be prejudiced in defending on the merits."  In short, Plaintiffs conflate the two Rules and **incorrectly attempt to insert a "good cause" analysis in Rule 15(c)(1)**.

Id. at **12-13 (emphasis added).  Since the new defendant did not receive notice within the required time period, and since the time period for relation back under Rule 15(c) could not be extended by the court, even for good cause, the proposed amendment was denied as futile.

Simply put, the ninety day notice period required for relation back cannot be extended.  As concisely stated by the Third Circuit Court of Appeal, in order for an amendment to relate back, "[t]he parties to be brought in by the amendment **must have received notice of the institution of the action within [90] days** following the filing of the action, the period provided for service of the complaint by Rule 4(m) of the Federal Rules of Civil Procedure."  Garvin v. City of

---

[4] Rule 4(m) previously allowed one hundred days for service.  In 2015, the rule was amended to allow only ninety days for service.

<u>Philadelphia</u>, 354 F.3d 215, 221 (3d Cir. 2003) (emphasis added); <u>Singletary v. Pa. Dept. of Corrections</u>, 266 F.3d 186, 194 (3d Cir. 2001) (same).

In summary, while the Court may have extended the period of time in which the plaintiff was permitted to serve any John Doe defendants, the extension cannot also extend the ninety day time period in which to provide notice to Officer Thazhathel of the suit. Since Officer Thazhathel received no such notice, and since the plaintiff pleads no facts from which a contrary inference can be drawn, plaintiff's claims against Officer Thazhathel are time barred, and should be dismissed with prejudice.

In the interest of candor, the Third Circuit has not yet ruled on whether a "good cause" extension may be imported into the Rule 15(c) relation back rule. For this reason, some District Courts, out of an abundance of caution, have analyzed the "good cause" requirement in considering whether a proposed amendment related back[5]. <u>See</u> <u>Anderson v. Doe</u>, No. 11-cv-6267, 2012 U.S. Dist. LEXIS 181035 (E.D. Pa. Dec. 20, 2012); <u>Miller v. City of Phila.</u>, No. 13-cv-02145, 2014 U.S. Dist. LEXIS 88447 (E.D. Pa. July 21, 2014). In light of the fact that importing a "good cause" extension into the Rule 15 notice period essentially allows for indefinite extensions of the statute of limitations, <u>E.H.</u>'s well thought-out conclusion that relation-back extensions are not permitted should be followed. Even if the Court were to consider good cause[6], however, no good cause exists for an extension in this matter.

---

[5] Research has not revealed any cases actually holding that a "good cause" extension is allowed. The cases located by defense counsel all address the issue simply because the Third Circuit has not ruled on the question.

[6] Moving defendant was not privy to the arguments submitted by plaintiff at the Rule 16 conference for the extension of the service deadline. Since moving defendant was not a party at that time, he did not have an opportunity to be heard on the matter and should not be bound by the Court's former ruling, if the Court previously found that good cause existed.

In considering "good cause" under Rule 4(m), the courts consider the reasonableness of the plaintiff's efforts to comply with the 90 day deadline, potential prejudice to the defendants, and whether plaintiff moved for an enlargement of the time.  Anderson, 2012 U.S. Dist. LEXIS 181035 at *14; Miller, 2014 U.S. Dist. LEXIS 88447 at *12, citing, MCI Telecomms Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995).  The courts "have equated 'good cause' with the concept of 'excusable neglect' of Federal Rule of Civil Procedure 6(b)(2), which requires a 'demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specific in the rules."  MCI, 71 F.3d at 1097.  While prejudice is a relevant consideration, "the primary focus is on the plaintiff's reasons for not complying with the time limit in the first place."  Id.

In this case, the complaint is devoid of any facts which would suggest "good cause" for the failure to timely identify and provide notice to Officer Thazhathel of the suit.  Presumably, it will be plaintiff's contention that he did not know Officer Thazhathel's identity until after he filed suit and took pre-complaint discovery.  Plaintiff, however, sat on his claim for nearly two years, until just four days before the statute of limitations.  He did this despite the fact that he did not know the name of the corrections officer allegedly at issue.  In light of this knowledge, there is no reason that plaintiff could not have brought his suit at an earlier time, thereby allowing time to take discovery on the identity of the corrections officer before the expiration of the statute of limitations.

As the Third Circuit Court of Appeals has observed, "a plaintiff who does not know her assailant's name but promptly brings her action may be able to ascertain the identity of that person and sue him within two years of the incident involved and thus avoid the potential difficulties that a plaintiff who seeks to have her action relate back may encounter."  Garvin, 354 F.3d at 221 n 6. When a plaintiff cannot identify a defendant because she waited until the last possible moment to

bring suit, "[her] problems are self inflicted as they are attributable to her delay in bringing th[e] case." Id. Having sat on his hands for two years – and apparently not conducting any pre-suit investigation to identify the guard on duty at the time of the incident - plaintiff cannot now complain that he did not have sufficient time to identify Officer Thazhathel.

Furthermore, even after filing suit, plaintiff did not even move to take John Doe discovery until September 2, 2019 – just ten days before the expiration of the ninety day notice period – eighty days after filing suit. With knowledge of both the notice period and the fact that a John Doe defendant had been identified, plaintiff made no effort to even seek leave to take the necessary discovery until the notice period had nearly expired. Then, plaintiff did not move to extend the time for service until the Rule 16 on September 26, 2019. This was five days after the notice period expired. Thus, it cannot be said that plaintiff made good faith efforts to identify and give notice to Officer Thazhathel within the ninety day period. It certainly cannot be said that there is "good cause" for such an extension, particularly when no such facts are pled or suggested in the amended complaint.

In summary, the Court may not extend the ninety day notice period for relation back for "good cause." Even if it could do so, however, there is no good cause for the delay in this case. Plaintiff's failure to timely identify and notice Officer Thazhathel resulted solely from his lack of diligence in bringing suit, and then his eighty day delay in seeking discovery on the identity of the John Doe at issue.

## III.     **CONCLUSIONS**

Plaintiff's amended complaint should be dismissed for two reasons. First, it was improperly filed without leave of Court or the written consent of all parties. Second, plaintiff's claims against Officer Thazhathel are time barred and do not relate back to the filing of the original

complaint.  For both of these reasons, all claims against Officer Thazhathel should be dismissed with prejudice.

Respectfully submitted,

**BENNETT, BRICKLIN & SALTZBURG LLC**

By: _____

NICHOLAS A. CUMMINS
Attorney I.D. No. 203238
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA  19102
(215) 665-3328 / (215) 561-6661 – fax
cummins@bbs-law.com
Attorney for Defendant, Jojo Thazhathel

Date:   January 16, 2020

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMEEN McCALL | : |
| | : CIVIL ACTION – LAW |
| v. | : |
| | : NO.  19-cv-2568 |
| CITY OF PHILADELPHIA and | : |
| CORRECTIONS OFFICER | : |
| JOJO THAZHATHEL | : |

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing motion to dismiss was served on this date on all interested counsel by way of electronic filing with the court.

**BENNETT, BRICKLIN & SALTZBURG LLC**

By: _____

NICHOLAS A. CUMMINS
Attorney I.D. No. 203238
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA  19102
(215) 665-3328 / (215) 561-6661 – fax
cummins@bbs-law.com
Attorney for Defendant, Jojo Thazhathel

Date:   January 16, 2020

# **<u>EXHIBIT A</u>**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMEEN McCALL, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| | : | NO. _____ |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| CORRECTIONS OFFICER JOHN DOE, | : | JURY TRIAL DEMANDED |
| CORIZON HEALTH, | : | |
| | : | |
| Defendants. | : | |

## **COMPLAINT**

## I.      **PRELIMINARY STATEMENT**

1.      This is a civil rights action pursuant to 42 U.S.C. § 1983 concerning the defendants'
deliberate indifference in: failing to protect plaintiff from his cellmate who, upon information
and belief, had a known history of violence and misconducts; failing to protect plaintiff by
allowing his cellmates access to a hard plastic storage box, which was used to assault and
seriously injure him; and failing to ensure that plaintiff received immediate emergency medical
care for his seriously injured right eye following an assault by his cellmate at the Curran
Fromhold Correctional Facility ("CFCF") in Philadelphia.

2.      As a result of the defendants' failure to protect plaintiff and their deliberate indifference,
plaintiff received serious injuries, which included the permanent loss of his right eye.

3.      Plaintiff seeks money damages due to the permanent loss of his right eye, the pain and
suffering caused by the permanent loss of his eye, and for financial losses caused by defendants'
conduct.

## II.    JURISDICTION & VENUE

4.    The Court has jurisdiction over the subject matter of this complaint pursuant to 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343; pendent jurisdiction of this Court to consider claims under state law; and supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 (a) to hear and adjudicate state law claims.

5.    Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b) (2) because events and omissions giving rise to this claim occurred within the Curran-Fromhold Correctional Facility which is located in Philadelphia, Pennsylvania, within the Eastern District of Pennsylvania.

## III.    PARTIES

6.    Plaintiff, Ameen McCall (hereinafter, "plaintiff"), who is 38 years old, a resident of Philadelphia, Pennsylvania and currently out of custody,  was at all times relevant to this complaint, detained at the Curran-Fromhold Correctional Facility (hereinafter, "CFCF"), located at 7901 State Road, Philadelphia, PA 19136, which is part of the Philadelphia Department of Prisons ("PDP"), awaiting a hearing on allegations that he violated the terms and conditions of his probation/parole.

7,    Defendant City of Philadelphia is a municipal government organized and existing under the laws of the Commonwealth of Pennsylvania which operates and oversees all correctional facilities within the Philadelphia Department of Prisons, including CFCF.

8.    Defendant, Corrections Officer John Doe (hereinafter, "CO Doe"), was employed by the City of Philadelphia and the Philadelphia Department of Prisons as a corrections officer assigned to CFCF.  At all times relevant to this complaint, CO Doe acted under color of state law. He is sued in his individual capacity.

9.    Defendant, Corizon Health, with a principal place of business in Brentwood, Tennessee and a local office in Philadelphia, Pennsylvania, which operates under color of state law, was at all times relevant to this complaint, the holder of a contract to provide health care to inmates at the medical department of CFCF and responsible for adopting policies and implementing procedures and practices in regard to providing medical services for inmates there.

10.    At all times relevant to this Complaint, all defendants acted under color of state law.

11.    At all times relevant to this Complaint, defendant Doe was acting as an agent, servant and/or employee of defendant City of Philadelphia, was acting within the scope and course of his employment and was acting under the direct control and supervision of defendant City of Philadelphia.

## IV.    **FACTUAL ALLEGATIONS**

12.    Paragraphs 1 through 11 are incorporated herein by reference.

13.    Plaintiff was an inmate at CFCF who was initially detained there on or about June 8, 2017, due to an absconder warrant issued by his Philadelphia Probation Agent.

14.    Plaintiff was housed in a makeshift cell on CFCF's A-Block in a multi-purpose room on or about June 17, 2017 with three other inmates.

15.    As of June 17, 2017, plaintiff's three cellmates were: Mahdi Collins ("Collins"), a second inmate whose first name was Kevin and a third inmate known to plaintiff as "Boo Boo," all of whom were housed in a cell with two sets of bunk beds.

16.    Upon information and belief, the three other inmates in the cell with plaintiff – Mahdi Collins, "Kevin," and "Boo Boo" – appeared to be friends or associates of one another and, upon information and belief, had a history of prison misconducts, violent crimes and/or drug offenses.

17.     On or about the evening of June 17, 2017, Collins boasted to plaintiff that he murdered someone as a juvenile; he desired to kill his girlfriend and her family; and that he was facing a significant sentence for a parole violation.

18.     On or about the evening of June 17, 2017, while Mahdi Collins and plaintiff were engaged in a conversation inside their cell, Collins became angry and punched plaintiff in the back of his head and numerous times in his face with his fist.

19.     After the initial assault, when plaintiff returned to his bunk bed, Collins picked up a hard plastic unsecured commissary storage container from the cell and struck plaintiff with the corner of the container in his right eye, which caused plaintiff severe pain, bleeding, numbness and blindness.

20.     Shortly after the assault, CO Doe came to plaintiff's cell door for a routine check before the lights went out for the evening, at which time plaintiff told him that he needed immediate emergency medical attention for his eye, while holding his right eye, which was bleeding extensively.

21.     Upon information and belief, CO Doe observed plaintiff's eye injury; he heard plaintiff tell him that he needed immediate medical help; and he refused and/or ignored plaintiff's request for an escort to the medical department and/or for immediate medical assistance.

22.     CO Doe failed to respond to plaintiff's request for medical help and told plaintiff that, because it was a holiday weekend (Father's Day), there were no medical personnel available to assist him on the current shift.

23.     Shortly after CO Doe left plaintiff's cell, lights went out for the night and plaintiff never received necessary medical assistance for the entirety of the night for his severe eye injury.

24. Reasonably trained corrections officers in 2017 were aware that they should seek immediate medical care for an inmate who requests medical assistance for a serious injury to a major organ.

25. Additionally, reasonably trained corrections supervisors were aware of their responsibilities to train corrections officers to recognize when an inmate needs immediate medical care.

26. Reasonably trained corrections personnel are aware of their responsibilities to regularly check on the well-being and safety of inmates who are under their charge.

27. Reasonably trained corrections personnel are aware of their responsibilities to make sure that there are no objects in the cells occupied by inmates which could be used as an instrument of crime by one inmate to harm another inmate.

28. Defendant City of Philadelphia is an entity that operates a prison system and is aware of the need to have policies in place pertaining to corrections officers obtaining medical care for inmates who are seriously injured and the need to train its employees, including corrections officers as described above.

29. Defendant City of Philadelphia is an entity that operates a prison system and is aware of the need to have policies in place pertaining to keeping inmates safe and free from harm, including keeping objects out of cells that could be used as weapons to harm other inmates and keeping inmates with known propensities for violence housed separately from other inmates, as described above.

30. Defendant Corizon Health is an entity which operates the medical department at CFCF and is aware of the need to have policies in place pertaining to having adequate medical staff available to handle inmates' medical needs at all times, including weekends and holidays.

31.     On or about the evening of June 17 through on or about the morning of June 18, 2017, following the assault, plaintiff suffered severe pain and bleeding from his eye all through the night and was terrified that if he screamed for help, Collins, who had a reputation for violence, would kill or harm him to retaliate against him.

32.     On or about the evening of June 17 through on or about June 18, 2017, following the assault, Collins threatened plaintiff further by demanding that he hide his injury and keep quiet, which caused plaintiff to suffer in silence in his cell in fear for his life.

33.      On or about the morning of June 19, 2017, plaintiff was finally taken to the prison infirmary by a CFCF corrections officer.

34.     On the morning of June 19, 2017, Corizon Health employee Dr. Mohammad Haque saw plaintiff at the CFCF medical department due to the eye injury that plaintiff received from inmate Collins on June 17th.

35.      Shortly thereafter, on June 19, 2017, plaintiff was transported by police/prison personnel from CFCF to Wills Eye Hospital in Philadelphia due to his severe eye injury.

36.      Plaintiff was admitted to Wills Eye Hospital on June 19, 2017 due to pain and loss of vision and bleeding in his right eye.

37.     Plaintiff was diagnosed at Wills Eye Hospital with a ruptured globe and fracture of his sinus and nasal bones.

38.     Plaintiff's was taken in for surgery at Wills Eye Hospital, where physicians examined and attempted to repair his ruptured globe.

39.     Upon information and belief, plaintiff's Wills Eye Hospital physicians determined that it was too late to save his eye due to the severity of the injury and the delay in getting plaintiff to the hospital following the assault.

40. Plaintiff was released from Wills Eye Hospital on June 20, 2017, at which time he was transported back to the CFCF Infirmary for follow up care.

41. When plaintiff returned to CFCF, he was admitted to the infirmary.

42. After plaintiff returned to CFCF, he suffered from constant severe eye pain and emotional injuries due to the trauma of the assault.

43. When plaintiff returned to Wills Eye Hospital on June 26, 2017 for further treatment and follow-up for the injury to his eye, he continued to suffer from severe pain in his eye.

44. Upon information and belief, plaintiff was discharged from the CFCF infirmary on June 27, 2017 and transferred to the State Correctional Institution ("SCI") at Graterford and then afterwards to SCI Dallas to serve a state sentence imposed on him by a Philadelphia Judge for a violation of probation.

45. While at SCI Dallas, plaintiff was transferred back to Wills Eye Hospital for follow up care on numerous occasions in 2017 and 2018.

46. On October 16, 2017, plaintiff underwent surgery at Wills Eye Hospital for an enucleation and placement of an implant in his right eye.

47. After plaintiff's surgery, he was admitted to the infirmary at SCI Dallas until October 17, 2017.

48. Plaintiff was treated for pain in his right eye following the surgery.

49. On numerous occasions in 2017 and 2018, plaintiff consulted with an ocularist for a prosthesis for his eye and Wills Eye specialists for follow up care.

50. On or about September 4, 2018, plaintiff received a prosthesis for his right eye, which he has used continuously up to the present time.

51.     As a result of the assault on plaintiff and the resulting serious eye injury, plaintiff suffers

with blindness, pain, migraine headaches, emotional pain and suffering, as well as a risk of total

blindness if he loses sight in his left eye in the future.

## V.     CLAIMS FOR RELIEF

### COUNT I

### PLAINTIFF V. DEFENDANTS CITY OF PHILADELPHIA AND DOE
### FEDERAL CONSTITUTIONAL CLAIMS

52.     The allegations set forth in paragraphs 1-51 inclusive are incorporated as if fully set forth

herein.

53.     Defendant Doe was deliberately indifferent to plaintiff's serious medical needs when he

refused and/or ignored plaintiff's request for immediate medical treatment as plaintiff was

holding his bleeding eye; and caused plaintiff to suffer the loss of his eye, severe physical pain

and emotional distress to an unconscionable degree and well in excess of that which normally

attends prison life.

54.     The foregoing conduct of defendant Doe, acting under color of state law, was undertaken

in an effort to deprive plaintiff of his civil and constitutional rights, including plaintiff's rights,

privileges and immunities under the Eighth Amendment to the United States Constitution and/or

plaintiff's right to due process of law under the Fourteenth Amendment to the United States

Constitution.

55.     The violations of plaintiff's constitutional rights under the Eighth and/or Fourteenth

Amendments to the United States Constitution, plaintiff's damages and the conduct of

defendants Doe and City of Philadelphia were directly and proximately caused by the actions

and/or inactions of defendant City of Philadelphia, which has, with deliberate indifference, failed

to establish policies, practices, procedures and training regarding: (a) the need to obtain

immediate medical treatment for inmates who suffer from a serious injury; (b) the need to keep objects out of cells that could be used as instruments of crime by one inmate to harm another inmate; (c) the need to house inmates with histories of violence separately from other inmates; and (d) the necessity to prevent and immediately respond to inmate on inmate fights.

56.     As a direct and proximate result of defendant Doe and City of Philadelphia's illegal and unconstitutional actions, plaintiff suffered and suffers blindness and loss of his right eye, pain, fear, anxiety, physical injuries, severe emotional trauma and the loss of the enjoyment of life, all to his great detriment and loss.

## COUNT II

### PLAINTIFF V. DEFENDANTS CITY OF PHILADELPHIA AND CORIZON HEALTH FEDERAL CONSTITUTIONAL CLAIMS

57.     Plaintiff incorporates paragraphs 1 through 56 of this complaint as though fully set forth herein.

58.     The violations of plaintiff's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution, plaintiff's damages and the conduct of defendant Doe were directly and proximately caused by the actions and/or inactions of defendants City of Philadelphia and Corizon Health, which have, with deliberate indifference, failed to establish policies, practices, procedures and training regarding: the need to have adequate medical staff available at all times for inmates who need emergency medical care and treatment; the need for corrections officials to be informed and aware of when they need to bring injured or ill inmates to the medical department and the need for adequate medical staff to be available for inmates who need medical care.

## PUNITIVE DAMAGES

59.     Plaintiff incorporates paragraphs 1 through 58 of this complaint as though fully set forth

herein.

60.     The conduct of the individual defendants was outrageous, malicious, wanton, willful,

reckless and intentionally designed to inflict harm upon plaintiff.

61.     As a result of the actions of the individual defendants alleged in the preceding

paragraphs, plaintiff is entitled to punitive damages as to each cause of action.

## JURY DEMAND AND RELIEF DEMANDED

62.     Plaintiff demands a jury as to each defendant and as to each count.

WHEREFORE, plaintiff requests the following relief:

a.      Compensatory damages;

b.      Punitive damages;

c.      Reasonable attorney's fees and costs; and

d.      Such other and further relief as appears reasonable and just.


Respectfully submitted,


_____                    _____
Laurie R. Jubelirer, Esquire                        Amara Chaudhry Kravitz, Esquire
Jubelirer Law, LLC                                  Law Office of Amara Chaudhry
                                                    Kravitz

Attorneys for Plaintiff


Date:  June 13, 2019

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMEEN McCALL,                                    :
                                                 :        CIVIL ACTION
            Plaintiff,                            :
                                                 :
                                                 :        NO.19-2568
        v.                                       :
                                                 :
CITY OF PHILADELPHIA and                         :
CORRECTIONS OFFICER JOJO THAZHATHEL,:             JURY TRIAL DEMANDED
                                                 :
            Defendants.                          :

## **PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I.        **PRELIMINARY STATEMENT**

1.      This is a civil rights action pursuant to 42 U.S.C. § 1983 concerning the defendants'

deliberate indifference in: failing to protect plaintiff from his cellmate who, upon information

and belief, had a known history of violence and misconducts; failing to protect plaintiff by

allowing his cellmates access to a hard plastic storage box, which was used to assault and

seriously injure him; and failing to ensure that plaintiff received immediate emergency medical

care for his seriously injured right eye following an assault by his cellmate at the Curran

Fromhold Correctional Facility ("CFCF") in Philadelphia.

2.      As a result of the defendants' failure to protect plaintiff and their deliberate indifference,

plaintiff received serious injuries, which included the permanent loss of his right eye.

3.      Plaintiff seeks money damages due to the permanent loss of his right eye, the pain and

suffering caused by the permanent loss of his eye, and for financial losses caused by defendants'

conduct.

## II.    JURISDICTION & VENUE

4.    The Court has jurisdiction over the subject matter of this complaint pursuant to 42 U.S.C.

§1983 and 28 U.S.C. §§1331 and 1343; pendent jurisdiction of this Court to consider claims

under state law; and supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 (a) to

hear and adjudicate state law claims.

5.    Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b) (2) because events

and omissions giving rise to this claim occurred within the Curran-Fromhold Correctional

Facility which is located in Philadelphia, Pennsylvania, within the Eastern District of

Pennsylvania.

## III.    PARTIES

6.    Plaintiff, Ameen McCall (hereinafter, "plaintiff"), who is 38 years old and a resident of

Philadelphia, Pennsylvania, was at all times relevant to this complaint, detained at the Curran-

Fromhold Correctional Facility (hereinafter, "CFCF"), located at 7901 State Road, Philadelphia,

PA 19136, which is part of the Philadelphia Department of Prisons ("PDP"), awaiting a hearing

on allegations that he violated the terms and conditions of his probation/parole.

7,    Defendant City of Philadelphia is a municipal government organized and existing under

the laws of the Commonwealth of Pennsylvania which operates and oversees all correctional

facilities within the Philadelphia Department of Prisons, including CFCF.

8.    Defendant, Corrections Officer Jojo Thazhathel (hereinafter, "CO Thazhathel"), was

employed by the City of Philadelphia and the Philadelphia Department of Prisons as a

corrections officer assigned to CFCF.  At all times relevant to this complaint, defendant CO

Thazhathel acted under color of state law. He is sued in his individual capacity.

9.    At all times relevant to this Complaint, defendants acted under color of state law.

10.     At all times relevant to this Complaint, defendant CO Thazhathel was acting as an agent, servant and/or employee of defendant City of Philadelphia, was acting within the scope and course of his employment and was acting under the direct control and supervision of defendant City of Philadelphia.

## IV.     FACTUAL ALLEGATIONS

11.     Paragraphs 1 through 10 are incorporated herein by reference.

12.     Plaintiff was an inmate at CFCF who was initially detained there on or about June 8, 2017, due to a warrant for absconding issued by his Philadelphia Probation Agent.

13.     Plaintiff was housed in a makeshift cell on CFCF's A-Block in a multi-purpose room on or about June 17, 2017 with three other inmates.

14.     As of June 17, 2017, plaintiff's three cellmates were: Mahdi Collins ("Collins"), a second inmate whose first name was Kevin and a third inmate known to plaintiff as "Boo Boo," all of whom were housed in a cell with two sets of bunk beds.

15.     Upon information and belief, the three other inmates in the cell with plaintiff – Mahdi Collins, "Kevin," and "Boo Boo" – appeared to be friends or associates of one another and had a history of prison misconducts, violent crimes and/or drug offenses.

16.     The pod in CFCF where plaintiff's cell was located housed inmates with a high security level and was considered a closed custody area.

17.     Upon information and belief, plaintiff, who was incarcerated for absconding probation, had a lower security level than his cellmates and the inmates in his pod.

18.     On or about the evening of June 17, 2017, Collins boasted to plaintiff that he murdered someone as a juvenile; he desired to kill his girlfriend and her family; and that he was facing a significant sentence for a parole violation.

19.    On or about the evening of June 17, 2017, while Mahdi Collins and plaintiff were engaged in a conversation inside their cell, Collins became angry and punched plaintiff in the back of his head and numerous times in his face with his fist.

20.    After the initial assault, when plaintiff returned to his bunk bed, Collins picked up a hard plastic unsecured commissary storage container from the cell and struck plaintiff with the corner of the container in his right eye, which caused plaintiff severe pain, bleeding, numbness and blindness.

21.    Shortly after the assault to plaintiff's eye, defendant CO Thazhathel, who worked the 11:00 p.m. to 7:00 a.m. shift from June 17th through June 18th, 2017, came to plaintiff's cell door for a check, at which time plaintiff told him that he needed immediate emergency medical attention for his eye, while holding his right eye, which was bleeding extensively.

22.    Upon information and belief, defendant CO Thazhathel saw plaintiff; observed plaintiff's eye injury; heard plaintiff tell him that he needed immediate medical help; and refused and/or ignored and/or did not react at all to plaintiff's request for an escort to the medical department and/or for immediate medical assistance.

23.    Defendant CO Thazhathel failed to respond to plaintiff's request for medical help and told plaintiff that, because it was a holiday weekend (Father's Day), there were no medical personnel available to assist him on the current shift.

24.    After defendant CO Thazhathel spoke with plaintiff and left plaintiff's cell, he never initiated any further conversations with plaintiff or follow up checks specifically pertaining to plaintiff's well-being and safety during the remainder of his shift.

25.     Plaintiff never received necessary medical assistance for his serious eye injury for the entirety of the night during defendant CO Thazhathel's shift on June 17th and June 18th and throughout the next day on June 18th.

26.     Reasonably trained corrections officers in 2017 were aware that they should seek immediate emergency medical care for an inmate who requests medical assistance for a serious injury to a major organ.

27.     Additionally, reasonably trained corrections supervisors were aware of their responsibilities to train corrections officers to recognize when an inmate needs immediate emergency medical care.

28.     Reasonably trained corrections personnel are aware of their responsibilities to regularly check on the well-being and safety of inmates who are under their charge.

29.     Reasonably trained corrections personnel are aware of their responsibilities to make sure that there are no objects in the cells occupied by inmates which could be used as an instrument of crime by one inmate to harm another inmate.

30.     Defendant City of Philadelphia is an entity that operates a prison system and is aware of the need to have policies in place pertaining to corrections officers obtaining emergency medical care for inmates who are seriously injured and the need to train its employees, including corrections officers as described above.

31.     Defendant City of Philadelphia is an entity that operates a prison system and is aware of the need to have policies in place pertaining to keeping inmates safe and free from harm, including keeping objects out of cells that could be used as weapons to harm other inmates and keeping inmates with known propensities for violence and/or a high security level housed separately from other inmates with lower security levels, as described above.

32.     On or about the evening of June 17 through on or about the morning of June 18, 2017, following the assault, plaintiff suffered severe pain and bleeding from his eye all through the night and was terrified that if he screamed for help, Collins, who had a reputation for violence, would kill or harm him to retaliate against him.

33.     On or about the evening of June 17 through on or about June 18, 2017, following the assault, Collins threatened plaintiff further by demanding that he hide his injury and keep quiet, which caused plaintiff to suffer in silence in his cell in fear for his life.

34.     On or about the morning of June 19, 2017, plaintiff was finally taken to the prison infirmary by a CFCF corrections officer.

35.     On the morning of June 19, 2017, Corizon Health employee Dr. Mohammad Haque saw plaintiff at the CFCF medical department due to the eye injury that plaintiff received from inmate Collins on June 17th.

36.      Shortly thereafter, on June 19, 2017, plaintiff was transported by police/prison personnel from CFCF to Wills Eye Hospital in Philadelphia due to his severe eye injury.

37.      Plaintiff was admitted to Wills Eye Hospital on June 19, 2017 due to pain and loss of vision and bleeding in his right eye.

38.     Plaintiff was diagnosed at Wills Eye Hospital with a ruptured globe and fracture of his sinus and nasal bones.

39.     Plaintiff's was taken in for surgery at Wills Eye Hospital, where physicians examined and attempted to repair his ruptured globe.

40.     Upon information and belief, plaintiff's Wills Eye Hospital physicians determined that it was too late to save his eye due to the severity of the injury and the delay in getting plaintiff to the hospital following the assault.

41.     Plaintiff was released from Wills Eye Hospital on June 20, 2017, at which time he was transported back to the CFCF Infirmary for follow up care.

42.     When plaintiff returned to CFCF, he was admitted to the infirmary.

43.     After plaintiff returned to CFCF, he suffered from constant severe eye pain and emotional injuries due to the trauma of the assault.

44.     When plaintiff returned to Wills Eye Hospital on June 26, 2017 for further treatment and follow-up for the injury to his eye, he continued to suffer from severe pain in his eye.

45.     Upon information and belief, plaintiff was discharged from the CFCF infirmary on June 27, 2017 and transferred to the State Correctional Institution ("SCI") at Graterford and then afterwards to SCI Dallas to serve a state sentence imposed on him by a Philadelphia Judge for a violation of probation.

46.     While at SCI Dallas, plaintiff was transferred back to Wills Eye Hospital for follow up care on numerous occasions in 2017 and 2018.

47.     On October 16, 2017, plaintiff underwent surgery at Wills Eye Hospital for an enucleation and placement of an implant in his right eye.

48.     After plaintiff's surgery, he was admitted to the infirmary at SCI Dallas until October 17, 2017.

49.     Plaintiff was treated for pain in his right eye following the surgery.

50.     On numerous occasions in 2017 and 2018, plaintiff consulted with an ocularist for a prosthesis for his eye and Wills Eye specialists for follow up care.

51.     On or about September 4, 2018, plaintiff received a prosthesis for his right eye, which he has used continuously.

52.     As a result of the assault on plaintiff and the resulting serious eye injury, plaintiff suffers

with blindness, pain, migraine headaches, emotional pain and suffering, as well as a risk of total

blindness if he loses sight in his left eye in the future.

## V.     CLAIMS FOR RELIEF

### COUNT I

### PLAINTIFF V. DEFENDANT THAZHATHEL
### FEDERAL CONSTITUTIONAL CLAIMS

53.     The allegations set forth in paragraphs 1-52 inclusive are incorporated as if fully set forth

herein.

54.     Defendant CO Thazhathel was deliberately indifferent to plaintiff's serious medical needs

when he refused and/or ignored plaintiff's request for immediate medical treatment as plaintiff

was holding his bleeding eye; and caused plaintiff to suffer the loss of his eye, severe physical

pain and emotional distress to an unconscionable degree and well in excess of that which

normally attends prison life.

55.     The foregoing conduct of defendant CO Thazhathel, acting under color of state law, was

undertaken in an effort to deprive plaintiff of his civil and constitutional rights, including

plaintiff's rights, privileges and immunities under the Eighth Amendment to the United States

Constitution and/or plaintiff's right to due process of law under the Fourteenth Amendment to

the United States Constitution.

56.     As a direct and proximate result of defendant CO Thazhathel's illegal and

unconstitutional actions and/or inactions, plaintiff suffered and suffers blindness and loss of his

right eye, pain, fear, anxiety, physical injuries, severe emotional trauma and the loss of the

enjoyment of life, all to his great detriment and loss.

## COUNT II-MONELL CLAIMS

### PLAINTIFF V. DEFENDANT CITY OF PHILADELPHIA
### FEDERAL CONSTITUTIONAL CLAIMS

57.     Plaintiff incorporates paragraphs 1 through 56 of this complaint as though fully set forth herein.

58.     The violations of plaintiff's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution, plaintiff's damages and the conduct of defendant CO Thazhathel were directly and proximately caused by the actions and/or inactions of defendant City of Philadelphia, which has, with deliberate indifference, failed to establish policies, practices, procedures and training regarding: (a) the need to obtain immediate emergency medical treatment for inmates who suffer from a serious injury; (b) the need to keep objects out of cells that could be used as instruments of crime by one inmate to harm another inmate; (c) the need to house inmates with histories of violence and higher security levels separately from other inmates with lower security levels; and (d) the necessity to prevent and immediately respond to inmate on inmate fights.

### PUNITIVE DAMAGES

59.     Plaintiff incorporates paragraphs 1 through 58 of this complaint as though fully set forth herein.

60.     The conduct of the individual defendants was outrageous, malicious, wanton, willful, reckless and intentionally designed to inflict harm upon plaintiff.

61.     As a result of the actions of the individual defendants alleged in the preceding paragraphs, plaintiff is entitled to punitive damages as to each cause of action.

## JURY DEMAND AND RELIEF DEMANDED

Plaintiff demands a jury as to each defendant and as to each count.

WHEREFORE, plaintiff requests the following relief:

a.   Compensatory damages;

b.   Punitive damages;

c.   Reasonable attorney's fees and costs; and

d.   Such other and further relief as appears reasonable and just.

Respectfully submitted,

Laurie R. Jubelirer, Esquire
Jubelirer Law, LLC

Amara Chaudhry Kravitz, Esquire
Law Office of Amara Chaudhry
Kravitz

Attorneys for Plaintiff

Date:  October 29, 2019

# **<u>EXHIBIT C</u>**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMEEN McCALL, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| | : | NO. 2:19-CV-02568 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| CORRECTIONS OFFICER JOHN DOE, | : | JURY TRIAL DEMANDED |
| CORIZON HEALTH, | : | |
| | : | |
| Defendants. | : | |

**ORDER**

AND NOW, this _____4th_____ day of _____September_____, 2019, upon

consideration of Plaintiff's Motion for Leave to conduct Limited John Doe Discovery, it is

hereby **ORDERED** that the Motion is **GRANTED**, and:

(1) Within 30 days of the entry of this Order, defendant City of Philadelphia shall serve

upon plaintiff responses to the discovery requests attached as Exhibit A to plaintiff's

Motion; and

(2) Plaintiff is granted leave to notice depositions of relevant agents of defendant City of

Philadelphia, which includes the Philadelphia Department of Prisons and/or the

Curran Fromhold Correctional Facility for the limited purpose of obtaining the

identity of defendant John Doe named in plaintiff's Complaint.

BY THE COURT:

ANITA B. BRODY,          J.

COPIES VIA ECF 9/4/19

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMEEN MCCALL, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
|     v. | : | NO. 19-2568 |
| | : | |
| CITY OF PHILADELPHIA, | : | |
|     Defendant. | : | |

## ORDER

**AND NOW**, this _26th _ day of September, 2019, as stated on the record during the

conference held on September 26, 2019, it is **ORDERED** that Plaintiff's request for an extension

of time to serve any John Doe Defendants is **GRANTED** without prejudice to Plaintiff to request

an additional extension of time to serve if necessary.  It is further **ORDERED** that Plaintiff must

serve any John Doe Defendants **on or before November 20, 2019**.


s/Anita B. Brody

_____

ANITA B. BRODY, J.


Copies **VIA ECF** on 9/26/2019

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMEEN MCCALL | : | |
| | : | CIVIL ACTION |
| Plaintiff(s), | : | No. 19-2568 |
| v. | : | |
| CITY OF PHILADELPHIA, et al. | : | |
| Defendant(s). | : | |

## **SCHEDULING ORDER**

**AND NOW**, this __26TH ___day of   September, 2019, it is **ORDERED** as follows:

1.   Pretrial timetable:

- All discovery must be completed on or before:   **April 1, 2020**.

- Plaintiff's expert reports due on or before**:   March 4, 2020**.

- Defendant's expert reports due on or before:   **March 18, 2020**.

- Depositions of experts must be completed on or before:   **April 2, 2020**.

- Dispositive motions due on or before:   **April 15, 2020.**

- After all dispositive motions have been decided or when no dispositive motions have been filed and the time for filing dispositive motions has elapsed, the parties will be given notice of a trial date, a Final Pretrial Conference, and deadlines for pretrial filings.

2.   All summary judgment motions and responses must contain a statement of undisputed and disputed facts with citations to the record, including to the specific exhibit, page, and line number.   A party is granted 21 days to file a response in opposition to a motion for summary judgment and 10 days to file any reply or surreply.   Motions for leave to file a reply and surreply are not necessary for a Rule 56 motion because replies and surreplies are automatically

allowed.

3.  **REMINDER:** Counsel must submit to chambers TWO courtesy hard copies of all papers filed with the Clerk of Court or filed on ECF.   Courtesy copies should include the ECF docket entry number on the first page.   All exhibits should be separated by tabbed dividers.

4.   Your case has been assigned to Law Clerk. Maya Sosnov, maya_sosnov@paed.uscourts.gov.

5.   Judge Brody's Policies and Procedures can be accessed via the United States District Court for the Eastern District of Pennsylvania's website at **www.paed.uscourts.gov**.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

COPIES VIA ECF ON   9/26/2019

# **EXHIBIT F**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

```
AMEEN McCALL,                :CIVIL ACTION
     Plaintiffs,            :
                            :
      vs.                   :
                            :
CITY OF PHILADELPHIA,       :
CORRECTIONS OFFICER         :
JOHN DOE, CORIZON HEALTH,   :
     Defendants.           :NO. 2:19-cv-02568
```

- - -


        Oral deposition of JOJO THAZHATHEL, held

in the offices of the Bennett, Bricklin &

Saltzburg, LLC, 1500 Market Street, 32nd Floor,

Philadelphia, Pennsylvania 19102, commencing

at 10:05 a.m., October 4, 2019, before Diane

Griffin, Court Reporter, Notary Public.

- - -



                DIANE GRIFFIN
           PROFESSIONAL COURT REPORTER
          JENKINTOWN, PENNSYLVANIA 19103
                (267) 808-4429

```
 1                        - - -

 2                     EXAMINATION

 3                        - - -

 4   BY MR. CUMMINS:

 5   Q.      When is the first time you learned that

 6   there was a lawsuit involving Mr. McCall?

 7   A.       Two days before -- Wednesday.

 8                    MR. MILLER:  You said Wednesday?

 9                    THE WITNESS:  Last Wednesday.

10                    MS. JUBELIRER:  You mean two days

11             ago?

12                    THE WITNESS:  Yes, yes.  When I

13             came here to see him, he showed me.

14                        - - -

15                    (Whereupon, the deposition was

16             concluded at approximately 12:20 p.m.)

17                        - - -

18

19

20

21

22

23

24
```