## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMEEN McCALL | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 19-cv-2568 |
| | : | |
| CORRECTIONS OFFICER | : | |
| JOJO THAZHATHEL | : | |
| Defendant. | : | |

**April 18, 2022**                                                    **Anita B. Brody, J.**

### MEMORANDUM

On the evening of June 17, 2017, Plaintiff Ameen McCall was violently attacked and

struck in the right eye with a storage container by his cellmate at the Curran-Fromhold

Correctional Facility ("CFCF").  Shortly after the assault, Defendant Corrections Officer Jojo

Thazhathel visited the cell and saw that McCall was bleeding extensively from his right eye.

McCall asked for immediate medical help, but Thazhathel refused to assist him because it was a

holiday weekend, and no medical personnel were available.  McCall did not receive medical

attention for his eye until June 19, 2017.  Physicians diagnosed McCall with a ruptured globe and

eventually removed his right eye.

McCall brings suit against Thazhathel pursuant to 42 U.S.C. § 1983, alleging that the

delay in medical care violated McCall's Eighth and Fourteenth Amendment rights.[1]  I exercise

---

[1] 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
> any State . . . subjects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 does not create any substantive rights; rather, it provides a remedy for violations of other
federal constitutional or statutory rights.  *Doe v. Delie*, 257 F.3d 309, 314 (2001).

subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Thazhathel moves for summary judgment on the basis that McCall's suit is barred by the statute of limitations and/or Thazhathel is entitled to qualified immunity.  I will deny Thazhathel's motion for summary judgment.

## I. FACTUAL BACKGROUND

On the evening of June 17, 2017, after the inmates were locked in their cells for the night, McCall was sitting on the edge of his bed when his cellmate struck him with the corner of a storage container in his right eye. McCall Dep. 194:13-24, ECF No. 62-1.  Upon being hit, McCall heard a pop and lost vision in his right eye. *Id.* at 199:2-5.  McCall began to bleed profusely.  *Id.* at 203:20-204:2.  McCall's blood went everywhere in the cell, including the bed, the toilet, the sink, and the floor, making the cell look "like a crime scene."  *Id.*

Soon after the assault, McCall heard Corrections Officer Thazhathel walking toward his cell.  *Id.* at 196:4-197:2.  When Thazhathel arrived at his cell, McCall went to the door and told Thazhathel, "Officer, I need medical attention immediately."  *Id.* at 197:3-4.  Thazhathel shined a flashlight into the window of McCall's cell door.  *Id.* at 204:9-24.  Thazhathel observed McCall holding his hand over his eye and "blood[] going down [McCall's] hands, down his arms."  *Id.* at 205:1-7.  "[T]he blood was so much.  It was all over everything."  *Id.* at 205:1-2.  McCall then removed his hand from his face and showed Thazhathel that his eye was bleeding.  *Id.* at 197:6-7.  Thazhathel told McCall that he could not get medical attention because it was Father's Day and there were no nurses working the shift.

McCall "remember[s] thinking I'm going to bleed to death out of my eye."  *Id.* at 198:23-24. He "felt like [he] was under the influence," and was "dazed and confused."  *Id.* 214:4-6. After Thazhathel left, McCall began to receive threats from his attacker.  *Id.* at 199:6-11.

McCall overheard the cellmate who had assaulted him and another cellmate asking each other,
"should we finish him off[?] . . . I'm not going nowhere no time soon, so I might as well, ha, ha,
ha." *Id.* at 199:14-18.  McCall also heard his cellmates discussing what they would do to him if
he made another attempt to get help.  *Id.* at 203:2-9, 214:6-11. McCall was afraid that one of his
cellmates might attack him again.  *Id.* at 202:17-203:9.  McCall "just couldn't take it," and he
"blacked out" until the next morning.  *Id.* at 199:18-20.

On June 19, 2017, McCall finally received medical treatment for his eye and was
transported for care to Wills Eye Hospital.  *Id.* at 212:4-6.  The doctors at Wills Eye Hospital
could not save McCall's right eye and eventually it was removed.  *Id.* at 219:1-21.

Doctor Eydie Miller-Ellis, M.D., an ophthalmologist, and a Professor of Clinical
Ophthalmology at the Perelman School of Medicine at the University of Pennsylvania, provided
an expert report that concluded:

> This injury was so extensive that the prognosis for vision recovery was very poor .
> . . . The eyeball was split open and this resulted in massive hemorrhage and damage
> to delicate intraocular structures, including the retina. With an injury of this severity
> it cannot be said to a reasonable degree of medical certainly [sic] that earlier
> intervention would have improved the outcome in this case. To the contrary, there
> is a very poor chance that earlier surgery would have improved the outcome.

Def.'s Mot. Ex. C at 4, ECF No, 62-1.

## II. PROCEDURAL BACKGROUND

On June 13, 2019, McCall filed a Complaint ("Original Complaint") against Defendants
City of Philadelphia ("City") and Corrections Officer John Doe,[2] alleging that Defendants
violated his Eighth and Fourteenth Amendment rights.  Compl., ECF No. 1.  Shortly after filing

---

[2] In the Original Complaint, McCall also brought suit against Defendant Corizon Health.  On July 24,
2019, the parties stipulated to the dismissal of Corizon Health.  ECF No. 7.

the Original Complaint, McCall's counsel began reaching out to the City for assistance in identifying the John Doe Officer.

On June 17, 2019, McCall's counsel emailed the City "to inquire about service of the complaint and identification of defendant John Doe."  Pl.'s Resp. Ex. E, ECF No. 66-1.  The City's Chief Deputy City Solicitor responded, "Please mail waivers of service to my attention. Once I assign the case we will request the investigation file which should aid us in identifying [t]he 'John Doe' defendants."  Pl.'s Resp. Ex. F, ECF No. 66-1.  On June 25 and July 8, 2019, McCall's counsel followed-up with the Chief Deputy City Solicitor to get the contact information for the assigned attorney to work on identifying John Doe Officer.  Pl's Resp. Ex. G, ECF No. 66-1.

On July 24, 29, and 30, 2019, after receiving the contact information for the assigned attorney, McCall's counsel reached out to the City's counsel for assistance in identifying John Doe Officer.  Pl.'s Resp. Ex. H, ECF No. 66-1.  At the end of July 2019, the City's counsel responded that he would consider the request to assist with identifying John Doe Officer when he returned from vacation on August 16, 2019.  *Id.*  On August 19, 2019, McCall's counsel again reached out to the City's counsel to work on identifying John Doe Officer.  Pl.'s Resp. Ex. I, ECF No. 66-1.  That same day, the City's counsel requested that McCall's counsel send him Rule 34 discovery requests to which he would respond in accordance with the Federal Rule of Civil Procedure.  *Id.*  On August 27, 2019, McCall's counsel responded:

> In regard to our request for you to assist us in identifying defendant John Doe in plaintiff's complaint, we do not have the time to wait for the City to respond to a Rule 34 request . . . .  We only have 90 days from the filing of the complaint (until September 13, 2019) to serve defendant Doe with an amended complaint according to Federal Rule of Civil Procedure 4(m).  We risk dismissal of the action if Doe is not served before then.  Therefore, unless you are willing . . . to assist us in identifying John Doe, as was assured to us by your supervisor . . . at the time we filed the complaint and as we have been requesting of the City ever since we filed

4

the complaint, we will proceed with a Motion to Conduct John Doe Discovery, which we expect to file by the end of the week.

*Id.*

On September 2, 2019, after several failed attempts at getting the City's cooperation in identifying John Doe Officer, McCall filed a Motion for Leave to Conduct Limited John Doe Discovery.  Mot. Leave, ECF No. 11.  On September 4, 2019, the Court granted McCall's motion.  Order, ECF No. 13.  In light of the Court's order, on September 5, 2019, McCall's counsel reached out to the City's counsel to schedule depositions necessary to identify John Doe Officer.  Pl.'s Resp. Ex. J, ECF No. 66-1.  On September 13, 2019, the City's counsel responded, "We're working to identify the best deponent."  *Id.*  On September 17, 22, and 23, 2019, McCall's counsel reached out to the City's counsel to schedule depositions.  Pl.'s Resp. Ex. L, ECF No. 66-1.

On September 24, 2019, the City's counsel finally provided the names of three correctional officers, including Thazhathel, who were working on McCall's pod at CFCF at the time of the injury to his eye.  Pl.'s Resp. Ex. K ¶ 3, ECF No. 66-1.  The City's counsel stated that he did not believe any depositions were necessary to identify the John Doe Officer.  Pl.'s Resp. Exs. L, Q, ECF No. 66-1. On that same date, September 24, 2019, the City's counsel informed McCall's counsel for the first time that the City would not be representing any individual defendants in the matter and that any individual defendants would be represented by Nicholas Cummins.  *Id.*

On September 26, 2019, the Court held a Rule 16 Conference, at which time McCall's counsel disclosed that they were still encountering difficulty getting the City to identify John Doe Officer and moved for an extension of time to serve any John Doe Officer.  Due to the repeated attempts to learn the identity of John Doe Officer, the Court granted McCall's motion

for an extension of time to serve any John Doe Officer until on or before November 20, 2019.

Order, ECF No. 17.

On October 2, 2019, Cummins confirmed his representation of Thazhathel.  Pl.'s Resp.

Ex. M, ECF No. 66-1.  On October 4, 2019, McCall's counsel deposed Thazhathel.  Def.'s Mot.

Ex. M, ECF No. 62-1.  At his deposition, Thazhathel affirmed that he first learned of the lawsuit

on October 2, 2019.  *Id.* at 58:5-13; *see also* Def.'s Mot. Ex. N at 88:17-23, ECF No. 62-1.  On

October 22, 2019, McCall's counsel advised Thazhathel and the City that McCall had identified

Thazhathel as John Doe Officer.  Def.'s Mot. Ex. O, ECF No. 62-1.

On October 29, 2019, before the extension of time to serve any John Doe Officer had

expired, McCall filed a First Amended Complaint ("Amended Complaint") replacing John Doe

Officer with newly named Defendant Corrections Officer Jojo Thazhathel.[3]  Am. Compl., ECF

No. 20.  The factual allegations and claims in the Amended Complaint remained the same as in

the Original Complaint.  *Id.*

## III. STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the

governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is

"genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving

party.  *Id.*  In ruling on a motion for summary judgment, the court must draw all inferences from

the facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[3] In Plaintiff's Amended Complaint, McCall also brought suit against Defendant City of Philadelphia.  On March 15, 2022, however, the Court entered a stipulation of dismissal of the City.  ECF No. 69.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The materials in the record that parties may rely on include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  In opposing a motion for summary judgment, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions."  *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

The inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

## IV. DISCUSSION

Thazhathel moves for summary judgment on the basis that the action is barred by the statute of limitations and/or that Thazhathel is entitled to qualified immunity.

### A.  The Statute of Limitations

Thazhathel argues that McCall's claims against him should be dismissed because

they are barred by the statute of limitations.  In actions brought under § 1983,  a court borrows the state statute of limitations for personal injury actions.  *Owens v. Okure*, 488 U.S. 235, 236 (1989).  In Pennsylvania, the applicable statute of limitations for § 1983 actions is the two-year statute of limitations applicable to personal injury actions.  *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003) (citing 42 Pa. Cons. Stat. Ann. § 5524(7)).

It is undisputed that the two-year statute of limitations for McCall's claim began to run when the assault and subsequent interaction with Thazhathel occurred on the evening of June 17 into June 18, 2017.  The Original Complaint was filed on June 13, 2019.  The Amended Complaint was filed on October 29, 2019.  On its face, McCall's Amended Complaint was filed four months after the statute of limitations had expired on June 18, 2019.  Thazhathel contends that the claims against him must be dismissed because the action against him was not brought within the statute of limitations.  McCall responds that the claims against Thazhathel were timely filed because the Amended Complaint relates back to the Original Complaint that was filed within the two-year statute of limitations.

The relation back doctrine "can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint." *Singletary v. Pa. Dept. of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001).  Federal Rule of Civil Procedure 15(c) governs when an amended complaint identifying a John Doe defendant relates back to the original complaint.[4]  *Garvin*, 354 F.3d at 220.  For an amended complaint identifying a John Doe to relate back, a plaintiff must show:

---

[4] Federal Rule of Civil Procedure 15(c) provides that an amended pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(1) the claim or defense set forth in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading; (2) within the time period provided in Rule 4(m), the party or parties to be added received notice of the institution of the suit and would not be prejudiced in maintaining a defense; and (3) the party sought to be added knew that, but for a mistake concerning his or her identity, he or she would have been made a party to the action.

*Id.* at 222.

Thazhathel only argues that the Amended Complaint does not relate back to the Original Complaint because Thazhathel did not receive notice of the lawsuit until October 2, 2019, well outside the 90-day period provided by Federal Rule of Civil Procedure 4(m).  Rule 4(m) requires a plaintiff to serve a defendant within 90 days after the complaint is filed, "[b]ut if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  McCall contends that Thazhathel received timely notice because he either had constructive notice of the suit within the 90-day period under the "shared attorney" method or good cause under Rule 4(m) extended the notice period beyond the 90 days.

### 1. The "Shared Attorney" Method of Constructive Notice

"The 'shared attorney' method of imputing Rule 15(c) . . . notice is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may

---

    (B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

    (C)  the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

        (i)  received such notice of the action that it will not be prejudiced in defending on the merits; and

        (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

very well be joined in the action." *Singletary*, 266 F.3d at 196.  A finding that the "shared attorney" method applies requires proof that notice of the action can be imputed to the newly named defendant within the 90-day period by virtue of representation the newly named defendant shared with a defendant originally named in the lawsuit.  *Singletary*, 266 F.3d at 196.

McCall contends that Thazhathel had constructive notice of the lawsuit under the "shared attorney" method because the City's counsel assumed responsibility for inquiries regarding the identity of John Doe Officer and failed to inform McCall's counsel that the City's counsel did not represent John Doe Officer.  Thazhathel counters that the "shared attorney" method does not apply because there is absolutely no evidence that the City's counsel ever represented Thazhathel.

The Third Circuit requires "a plaintiff . . . [to] show that there was 'some communication or relationship' between the shared attorney and the John Doe defendant prior to the expiration of the [90]–day period in order to avail him or herself of the shared attorney method of imputing notice." *Garvin*, 354 F.3d at 225 (quoting *Singletary*, 266 F.3d at 196-97).  The City's counsel never accepted service of the complaint for Thazhathel, never told McCall's counsel that he was representing Thazhathel, never offered to provide legal services to Thazhathel, and never entered an appearance on behalf of Thazhathel.  Moreover, Thazhathel did not learn of the existence of the lawsuit until after expiration of the 90-day period, on October 2, 2019, when Nicholas Cummins contacted Thazhathel and offered to represent him.  McCall "has failed to come forth with any evidence of shared representation or communication." *Garvin*, 354 F.3d at 225.  Therefore, McCall did not receive constructive notice of the lawsuit under the "shared attorney" method.

## 2. Good Cause Extension of the Notice Period

Thazhathel had to receive notice of the Amended Complaint within the period provided by Federal Rule of Civil Procedure 4(m), in order for the Amended Complaint to relate back to the Original Complaint.  Rule 4(m) requires a plaintiff to serve a defendant within 90 days after the complaint is filed, "[b]ut if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).

McCall argues that even though Thazhathel did not receive notice within 90 days after the Original Complaint was filed, McCall has demonstrated good cause to extend the notice period beyond the 90-day period as provided by Rule 4(m).  Thazhathel contends that good cause is inapplicable to the notice period for relation back and does not extend Rule 15(c)'s notice period.  Alternatively, Thazhathel argues that even if good cause extends Rule 15(c)'s notice period, McCall has not established that good cause exists for his failure to provide notice to Thazhathel within the 90-day period.

For an amended complaint naming a John Doe defendant to relate back to the original complaint, Rule 15(c) requires that the John Doe defendant received notice of the action "within the period provided by Rule 4(m) for serving the summons and complaint."  Fed. R. Civ. P. 15(c)(1)(C).  Thazhathel fails to provide any convincing reason why Rule 15(c)'s notice period should incorporate Rule 4(m)'s 90-day period without also incorporating Rule 4(m)'s good cause extension of that period.  The Advisory Committee Note to Rule 15(c), supports the position that good cause extends Rule 15(c)'s notice period:

> In allowing a name-correcting amendment within the time allowed by Rule 4(m), this rule allows not only the [90] days specified in that rule, *but also any additional time resulting from any extension ordered by the court pursuant to that rule*, as may be granted, for example, if the defendant is a fugitive from service of the summons.

Fed. R. Civ. P. 15, Advisory Comm. Notes (1991 Amendment) (emphasis added).[5]  Opinions

from several courts of appeal also support this position.  In *Robinson v. Clipse*, the Fourth Circuit

explained that "Rule 15(c)'s notice period incorporates any extension of the [90]–day period

under Rule 4(m)," and held that the plaintiff had demonstrated good cause to extend the notice

period."  602 F.3d 605, 608 (4th Cir. 2010).   Similarly, the Eighth Circuit has clarified that

"[t]he [90]–day [notice] requirement . . . can be extended by any service-of-process extensions

the district court might grant for 'good cause.'"  *Lee v. Airgas Mid-S., Inc*., 793 F.3d 894, 897

n.3 (8th Cir. 2015) *(*citing Fed. R. Civ. P. 4(m); Fed. R. Civ. P. 15, advisory committee's note

(1991)).  In fact, courts of appeal that have addressed this issue have uniformly agreed that Rule

15(c)'s notice period incorporates Rule 4(m)'s good cause extension of that period.  *See Donald

v. Cook Cty. Sheriff's Dept.*, 95 F.3d 548, 561 (7th Cir. 1996) (remanding to the district court to

determine whether good cause existed to extend Rule 15(c)'s notice period); *Skoczylas v. Fed.

Bureau of Prisons*, 961 F.2d 543, 545 (5th Cir. 1992) (noting that Rule 15(c)'s notice period can

be extended if good cause is shown); *Green v. Robinson*, 112 F. App'x 165, 169 (3d Cir. 2004)

(considering whether the plaintiff "satisfied the requirements of Rule 15(c)(3) because he ha[d]

'good cause' for his failure to provide timely notice"); *Jackson v. Herrington*, 393 F. App'x 348,

353 (6th Cir. 2010) (holding that the plaintiff qualified for a good cause extension of Rule

15(c)'s notice period).  The plain language of Rule 15(c), the Advisory Committee Note, and

---

[5] Thazhathel argues that the Advisory Committee Note only provides for an extension of the 90-day period to provide notice when a defendant is "a fugitive from service of the summons."  Fed. R. Civ. P. 15, Advisory Comm. Notes (1991 Amendment).  The Advisory Committee note, however, clearly explains that "any extension ordered by the court pursuant to" Rule 4(m) extends the period for providing notice and that "a fugitive from service" is only one such "example" of when an extension might be granted.  *Id.*

persuasive authority from several courts of appeal establish that Rule 15(c)'s notice period incorporates Rule 4(m)'s good cause extension of the 90-day period.[6]

If McCall can establish that good cause entitles him to an extension of the 90-day notice period, then McCall's Amended Complaint naming Thazhathel as a defendant will relate back to his Original Complaint. A finding of good cause for an extension "requires 'a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.'" *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (quoting *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1312 (3d Cir. 1995)). "[T]he primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.*

McCall argues that good cause exists for an extension because he diligently pursued discovery of Thazhathel's identity after he filed the Original Complaint. Thazhathel argues that good cause does not exist because McCall delayed filing the Original Complaint until only a few days before expiration of the statute of limitations. McCall's decision to file his Original Complaint less than a week before the expiration of the statute of limitations, however, is irrelevant because whether good cause exists depends entirely on whether McCall had a good-faith, reasonable basis for failing to provide notice to Thazhathel of the lawsuit within the 90-day period after he filed the Original Complaint.

---

[6] In addition to requiring a court to extend time if good cause is shown, Rule 4(m) "allow[s] a court discretion to dismiss or extend time absent a showing of good cause." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). Because Rule 15(c)'s notice period incorporates any extensions allowed by Rule 4(m), a court also has the discretion to extend the Rule 15(c) notice period absent a showing of good cause. As discussed below, good cause exists to extend the notice period. If, however, McCall did not have good cause to extend the notice period, the Court would grant a discretionary extension of the notice period. *See Petrucelli*, 46 F.3d at 1305 (instructing the district court to first determine if good cause exists for an extension, and if good cause doesn't exist, then allowing the court in its discretion to decide whether to grant an extension).

Alternatively, Thazhathel argues that good cause does not exist because McCall delayed engaging in John Doe discovery after he filed the Original Complaint.  McCall filed his Original Complaint on June 13, 2019.  The 90-day notice period expired on September 11, 2019. Thazhathel contends that McCall did not diligently engage in John Doe discovery because McCall delayed moving for John Doe discovery until September 2, 2019, and he delayed moving for an extension of time to serve John Doe Officer until September 26, 2019.  McCall counters that he continuously pursued John Doe discovery with the City's counsel during the entire period between the filing of the Original Complaint and the Amended Complaint.

The record reveals that McCall's counsel worked diligently and tried to work cooperatively with the City's counsel to identify the John Doe Officer during the 90-day notice period.  On June 17, 2019, only a few days after filing the Original Complaint, McCall's counsel emailed the City "to inquire about service of the complaint and identification of defendant John Doe."  Pl.'s Resp. Ex. E.  The Chief Deputy City Solicitor responded, "Please mail waivers of service to my attention.  Once I assign the case we will request the investigation file which should aid us in identifying [t]he 'John Doe' defendants."  Pl.'s Resp. Ex. F. On June 25 and July 8, 2019, McCall's counsel followed up with the Chief Deputy City Solicitor.  Then, on July 24, 29, and 30, 2019, McCall's counsel followed up with the attorney assigned to serve as the City's counsel.

At the end of July 2019, more than a month after McCall's counsel began inquiring about the identity of John Doe Officer, the City's counsel responded that he would consider the request to assist with identifying John Does Officer when he returned from vacation on August 16, 2019. On August 19, 2019, McCall's counsel again reached out to the City's counsel to work on identifying John Doe Officer.

For the first time, more than two months after McCall's counsel began asking for assistance to identify John Doe Officer, the City's counsel requested that McCall's counsel send him Rule 34 discovery requests.  On August 27, 2019, McCall's counsel responded:

> In regard to our request for you to assist us in identifying defendant John Doe in plaintiff's complaint, we do not have the time to wait for the City to respond to a Rule 34 request . . . .  We only have 90 days from the filing of the complaint (until September 13, 2019) to serve defendant Doe with an amended complaint according to Federal Rule of Civil Procedure 4(m).  We risk dismissal of the action if Doe is not served before then.  Therefore, unless you are willing . . . to assist us in identifying John Doe, as was assured to us by your supervisor . . . at the time we filed the complaint and as we have been requesting of the City ever since we filed the complaint, we will proceed with a Motion to Conduct John Doe Discovery, which we expect to file by the end of the week.

Pl.'s Resp. Ex. I.  On September 2, 2019, after multiple attempts to work cooperatively with the City to identify John Doe Officer, McCall's counsel filed a motion to conduct John Doe discovery.

On September 5, 2019, after the Court granted the motion, McCall's counsel again reached out to the City's counsel, this time to schedule depositions necessary to identify John Doe Officer.  On September 13, 2019, the City's counsel responded that the City was working to identify a deponent.  On September 17, 22, and 23, 2019, McCall's counsel continuously reached out to the City's counsel to schedule depositions.  On September 24, 2019, the City's counsel finally provided the names of three correctional officers, including Thazhathel, but stated that he did not believe any depositions were necessary.  Additionally, on that same date, the City's counsel informed McCall's counsel for the first time that the City's counsel would not be representing any individual defendants in the matter and that any individual defendants would be represented by Nicholas Cummins.

On September 26, 2019, the Court held a Rule 16 Conference, at which time McCall's counsel disclosed that they were still encountering difficulty getting the City to identify John

Doe Officer and moved for an extension of time to serve any John Doe Officer.  Due to the repeated attempts to learn the identity of the John Doe Officer, the Court granted McCall's motion for an extension of time to serve any John Doe Officer until on or before November 20, 2019.

On October 4, 2019, McCall's counsel was finally able to depose Thazhathel.  Only three weeks after the deposition, on October 29, 2019, well before the extension of time to serve any John Doe Officer had expired, McCall filed the Amended Complaint naming Thazhathel as a defendant.

From the inception of the litigation until the filing of the Amended Complaint, McCall's counsel was in continuous contact with the City's counsel in an effort to identify John Doe Officer.  Based on early representations from the Chief Deputy City Solicitor and the City's counsel, McCall's counsel reasonably expected that the City would cooperate in identifying John Doe Officer without the need for formal discovery requests.  Once McCall's counsel realized that this was not the case, McCall quickly filed a motion for John Doe discovery and, shortly thereafter, McCall moved for an extension of time to serve any John Doe Officer.

Despite many communications with McCall's counsel, the City's counsel waited more than 90 days after the filing of the Original Complaint to inform McCall's counsel that the City's counsel would not represent any John Doe Officer.  Any delay in formal motions practice by McCall's counsel is excusable considering that the City's counsel failed to cooperate on John Doe discovery and failed to alert McCall's counsel that any John Doe Officer would have separate representation.

The record demonstrates that McCall's counsel worked in good-faith to learn the identity of John Doe Officer within the 90-day notice period.  When McCall was unable to provide notice

to John Doe Officer within 90-days, McCall's counsel sought and received an extension of time

to serve.  McCall filed an Amended Complaint naming Thazhathel as a defendant on October 29,

2019, well before the extension of time to serve any John Doe Officer had expired.  Good cause

exists to extend the notice period because McCall has demonstrated a reasonable basis for not

complying with the time limit in the first place.  McCall's Amended Complaint relates back to

his Original Complaint because good cause extends Rule 15(c)'s notice period.  Therefore,

McCall's suit against Thazhathel is not barred by the statute of limitations.

### B. Qualified Immunity

Thazhathel argues that he is entitled to qualified immunity on McCall's § 1983 claim that

a delay in medical care violated his constitutional rights.  McCall contends that Thazhathel is not

entitled to qualified immunity.

"The doctrine of qualified immunity shields officials from civil liability so long as their

conduct 'does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'"  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  Qualified immunity under § 1983 shields

officials from liability "unless (1) they violated a federal statutory or constitutional right, and (2)

the unlawfulness of their conduct was 'clearly established at the time.'"  *D.C. v. Wesby*, 138 S.

Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "The first prong –

a constitutional inquiry – requires us to consider the following question: 'Taken in the light most

favorable to the party asserting the injury, do the facts alleged show the officer's conduct

violated a constitutional right?'"  *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021)

(quoting *Davenport v. Borough of Homestead*, 870 F.3d 273, 280 (3d Cir. 2017)).  "The second

prong requires us to consider 'whether the right was clearly established, such that it would [have

been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011)).  To determine whether a right was clearly established a district court must first look at Supreme Court precedent, as well as precedent from the Third Circuit.  *Id.*  A court has discretion to decide which of the two prongs of this analysis it should address first.  *Pearson*, 555 U.S. at 236.

Thazhathel argues that he is entitled to qualified immunity because McCall cannot establish prong one—that the delay in medical care violated a constitutional right or prong two— that the right was clearly established at the time of the alleged violation.

McCall asserts that the delay in medical care violated his Eighth Amendment and Fourteenth Amendment rights.  The Eighth Amendment, however, only prohibits the infliction of cruel and unusual punishment upon convicted prisoners.  *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).  The parties agree that McCall was a pretrial detainee at the time of the incident.  Thus, McCall's claim is properly based on the Due Process Clause of the Fourteenth Amendment, which "affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"  *Id.* (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  While the "Eighth Amendment provide[s] a floor for our due process inquiry," *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005), both parties apply the Eighth Amendment right established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976), that prohibits deliberate indifference to prisoners' serious medical needs.  "In previous cases, [the Third Circuit] has[s] found no reason to apply a different standard than that set forth in *Estelle* . . . when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment."  *Natale*, 318 F.3d at 581.  Therefore, McCall's delay in medical care claim will be evaluated under the same

standard used to evaluate similar claims brought under the Eighth Amendment.  *See Natale*, 318

F.3d at 582 (applying the Eighth Amendment standard to a pretrial detainee's Fourteenth

Amendment inadequate medical care claim).

      In *Estelle*, the Supreme Court held that "deliberate indifference to serious medical needs

of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth

Amendment."  *Estelle v. Gamble*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173

(1976)).  Relying on the standard enunciated in *Estelle*, Thazathel contends that McCall must

prove three elements to establish that the delay in medical care violated his constitutional rights:

(1) that a prison official was deliberately indifferent; (2) to his serious medical need; and (3) the

delay in treatment resulted in substantial harm.  Thazhathel contends that even when a plaintiff

can show "the other two elements of such a claim—that the medical need be serious, and that the

defendant act[ed] with deliberate indifference to the that need," the plaintiff must also prove

substantial harm, which is "also a requirement of an Eighth or Fourteenth Amendment delay of

medical care claim."  Def.'s Reply 1.  Thazhathel does not dispute that he was deliberately

indifferent to McCall's serious medical need.  Rather, Thazhathel  argues that he is entitled to

qualified immunity because McCall cannot prove that substantial harm resulted from the delay in

treatment because Thazhathel would have lost his eye regardless of the delay and it is not clearly

established that a delay in medical care violates the Constitution absent proof of substantial

harm.

      Despite Thazhathel's contention that substantial harm is a requirement to prove a delay in

medical treatment claim, it is clearly established by the Supreme Court and the Third Circuit that

"[t]he standard enunciated in *Estelle* is *two-pronged*: 'it requires deliberate indifference on the

part of the prison officials and it requires the prisoner's medical needs to be serious."  *Monmouth*

*Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (emphasis added) (quoting *West v. Keve*, 571 F.2d 158, 161 (3d Cir.1978)).  In the Third Circuit, proof of substantial harm is not  a separate element that a plaintiff is required to prove to establish a delay in medical care claim.  Rather, the Third Circuit views substantial harm as one means a plaintiff may rely on to establish that a medical need is serious:[7]

> A medical need is "serious," in satisfaction of the second prong of the *Estelle* test, if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." The seriousness of an inmate's medical need *may also* be determined by reference to the effect of denying the particular treatment.

*Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (emphasis added) (citations omitted); *see also Brooks v. Kyler*, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (denying deliberate indifference to medical needs claim based on many factors, including "no evidence of harm resulting from a delay in medical treatment  . . . [and] no evidence . . . that the temporary denial 'exposed the inmate to undue suffering or the threat of tangible residual injury'" (citations omitted)).  Moreover, a delay in medical care that does not result in substantial physical harm, may cause other effects that amount to a serious medical need.  *See Monmouth*, 834 F.2d at 347; *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990).  "For instance, *Estelle* makes clear that if 'unnecessary and wanton infliction of pain,' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious

---

[7] The First Circuit also views substantial harm as one means to establish a serious medical need. *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).  In contrast, several courts of appeals have held that to establish a serious medical need a plaintiff must prove through verified medical evidence that the delay in treatment had a detrimental effect. *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005); *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).  Additionally, the Fifth and the Tenth Circuits require proof that the delay in medical care resulted in substantial harm to establish a serious medical need.  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000); x*Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

nature contemplated by the eighth amendment." *Monmouth*, 834 F.2d at 347 (quoting *Estelle*, 429 U.S. at 103). In addition, mental anxiety that results from the denial or delay in medical care can also amount to a serious medical need. *White*, 879 F.2d at 111 (holding the plaintiff had sufficiently stated a claim for deliberate indifference to a serious medical need where inadequate medical treatment of recurrent boils did not result in the boils getting worse but did result in anxiety).

Even if Thazhathel meant to argue that McCall cannot establish a serious medical need because his injury did not result in substantial harm, Thazhathel still would not be entitled to qualified immunity because taken in the light most favorable to McCall there is a genuine dispute of fact as to whether he had a serious medical need. When Thazhathel went to McCall's cell door, he observed McCall holding his hand over his eye and "blood[] going down [McCall's] hands, down his arms." McCall Dep. at 205:1-7. McCall then removed his hand from his face and showed Thazhathel that his eye was bleeding. McCall's injury may amount to a serious medical need because it was "so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth*, 834 F.2d at 347 (citation omitted).

Additionally, McCall's injury may also amount to a serious medical need because of the effect the delay in treatment had on McCall. Thazhathel refused to get McCall medical treatment and left McCall in the cell overnight with his attacker. McCall "felt like [he] was under the influence," and was "dazed and confused." McCall Dep. 214:4-6. McCall received threats from his cellmates who discussed "finishing him off." *Id.* at 199:14-18. He was so afraid that one of his cellmates might attack him again that he "just couldn't take it," and he "blacked out" until the next morning. *Id.* at 199:18-20. These facts create a genuine dispute as to whether the delay in

treatment resulted in "unnecessary and wanton infliction of pain" and anxiety sufficient to establish a serious medical need.

Thazhathel is not entitled to summary judgment because it is clearly established that the only requirements necessary to prove a delay in medical care claim are deliberate indifference to a serious medical need, and a genuine dispute of material fact exists as to whether McCall has established these requirements necessary to prove his constitutional claim.

## V. CONCLUSION

For the above reasons, I will deny Thazhathel's motion for summary judgment.

_s/ANITA B. BRODY, J._
ANITA B. BRODY, J.

Copies VIA ECF